UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JHANANNIE SINGH,<br>    *Petitioner*, | ) CASE NO. 3:23-cv-500 (KAD)<br>)<br>) |
| v. | )<br>) |
| UNITED STATES OF AMERICA,<br>    *Respondent*. | ) AUGUST 19, 2024<br>) |

**MEMORANDUM OF DECISION**
**RE: 28 U.S.C. § 2255 PETITION (ECF NO. 1)**

Kari A. Dooley, United States District Judge:

Following a plea of guilty, by judgment dated November 29, 2022, Petitioner Jhanannie Singh was convicted of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. Petitioner was sentenced to a period of incarceration of 57 months. She filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 on April 14, 2023. ECF No. 1. Petitioner challenges her conviction asserting that she was denied effective assistance of counsel during the pendency of her criminal case. For the reasons set forth below, the petition is DENIED. (ECF No. 1)

**Background & Procedural History**

At sentencing, absent objection, the Court adopted the factual content of the Presentence Investigation Report as the Court's findings of fact. Those facts and those to which the Petitioner allocuted at her several change of plea proceedings are set forth in the Government's opposition to the Petition as follows.

Petitioner, with the help of her co-defendant, Glen Campbell, stole hundreds of thousands in United States savings bonds from an elderly female for whom she previously had worked as a home health aide. In November and December 2020, Campbell would travel from New York to

Connecticut to attempt to illegally redeem the stolen savings bonds. However, unbeknownst to Petitioner and Campbell, the bank employee who they believed could assist them with redeeming the bonds was an undercover FBI agent. Campbell exchanged the stolen bonds with the undercover agent on three occasions; on two of those occasions, he received money purportedly from the redemption of the stolen bonds, which he then shared with Petitioner. In January 2021, Petitioner attempted to cut Campbell out of their arrangement and planned to meet with the undercover agent herself. Petitioner and Campbell were thereafter arrested on January 28, 2021. Petitioner was released subject to certain pretrial conditions.

On February 16, 2021, a Federal Grand Jury returned a five-count indictment against Petitioner and Campbell. Petitioner was charged in Count One with conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371; in Counts Two, Three, and Four with exchanging, receiving, or concealing stolen bonds of the United States in violation of 18 U.S.C. §§ 510(b) & 2; and in Count Five with interstate transportation of stolen property in violation of 18 U.S.C. §§ 2314 & 2. Seven months after her arrest, Petitioner was again arrested on a federal criminal complaint on charges of obstruction of justice and witness tampering because she had called a potential witness and attempted to persuade the witness, by money and/or violence, to change their statement. Petitioner sought to have the witness blame a confidential source who had assisted in the investigation for the criminal scheme. The potential witness recorded several phone calls with Petitioner in which she threatened to have an accomplice ambush the confidential source and offered the witness money if the witness did not implicate Petitioner.

Ultimately, Petitioner, then-represented by retained counsel, Attorney James Hardy, decided to change her plea to guilty and first appeared before the Court for a change of plea hearing on August 10, 2022 by Zoom. During the first hearing, Petitioner confirmed that she had been able

to speak to her lawyer about her decision to plead guilty and did not need additional time to discuss that decision. Her attorney confirmed that he had not had any issues communicating with Petitioner, that he had discussed with her the right to a jury trial, and that he believed she was capable of understanding the nature of the proceedings and the rights she was waiving by pleading guilty. Petitioner also confirmed that she had enough time and opportunity to discuss the charges, her decision to plead guilty, and the potential adverse immigration consequences of her guilty plea. Petitioner stated she was satisfied to have her attorney represent her. However, later in the hearing, Petitioner claimed that she had never seen the indictment in this case.[1] Her attorney clarified that both he and her prior counsel had gone over the indictment with her in person. The Court then showed Petitioner a copy of the indictment, and she confirmed that she remembered speaking to both her attorneys about the indictment and was comfortable with proceeding. Petitioner expressed that she had reviewed the indictment with her current attorney and that they had discussed the charges, the potential penalties, the elements of the offense, and the Government's evidence against her. The Court reviewed the trial rights she would be waiving by pleading guilty and Petitioner confirmed she understood.

Upon turning to the plea agreement, the Government realized that Petitioner had a copy of the draft plea agreement. After a recess to provide Petitioner with a copy of the final plea agreement, Petitioner again expressed concerns about not having seen the indictment or discovery in the case. Petitioner then stated that she did not want to proceed with her plea and requested a new attorney. Her attorney indicated that he believed that Petitioner was prepared to proceed with the change of plea because he had gone over the voluminous amount of discovery with Petitioner

---

[1] It is the common practices of the Magistrate Judges in this district when conducting arraignments to confirm a defendant's receipt and review of the indictment.

and had reviewed the indictment and the plea agreement with her on a number of occasions. The Court concluded that it could not proceed with the change of plea hearing on that day.

Thereafter, Petitioner did not seek the appointment of new counsel, and on August 19, 2022, Petitioner pled guilty to Count One of the indictment. At the second change of plea hearing, the Court again conducted a complete and fulsome Rule 11 canvass. On November 28, 2022, the Court imposed a sentence of 57 months on Count One, followed by a three-year term of supervised release, and Judgment entered thereafter. Petitioner did not file a direct appeal of her conviction or sentence.

On April 14, 2023, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of counsel. Petitioner alleges that her attorney failed to: (1) communicate with her the consequences of pleading guilty, (2) conduct an adequate pretrial investigation, (3) negotiate a more favorable plea agreement, (4) file a direct appeal, and (5) object to sentencing enhancements. In response to an Order to Show Cause as to why the relief requested should not be granted, the Government filed its response to the Petition on June 29, 2023. (ECF No. 7)

**Applicable Legal Principles**

"Pursuant to § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence [or conviction] on four grounds: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States, or (2) that the court was without jurisdiction to impose such sentence, or (3) that the sentence was in excess of the maximum authorized by law, or (4) is otherwise subject to collateral attack.'" *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (quoting 28 U.S.C. § 2255(a)) (brackets omitted). These are "jurisdictional [or] constitutional" issues that create "a fundamental defect which inherently results in a complete miscarriage of

justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *See Hill v. United States*, 368 U.S. 424, 428 (1962). A federal prisoner may also use § 2255 to attack his conviction because "[f]or the purposes of § 2255, the term 'sentence' refers to *both* the prisoner's sentence and underlying conviction." *Fermin v. United States*, 859 F. Supp. 2d 590, 596 (S.D.N.Y. 2012) (citing *Johnson v. United States*, 623 F.3d 41, 45 (2d Cir. 2010)) (emphasis in *Fermin*).

Petitioner bears the burden of proving that a miscarriage of justice occurred. *United States v. Hoskin*, 905 F.3d 97, 103 (2d Cir. 2018); *see also Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995) ("The burden falls therefore falls upon petitioners to demonstrate their entitlement to relief under § 2255 . . . ."). In evaluating a petitioner's claim, "a district court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). "Indeed . . . when the judge that tried the underlying proceedings also presides over the § 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner." *Id.*

Second Circuit "precedent instructs that § 2255 review is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" *Hoskins*, 905 F.3d at 102 (quoting *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996)). The Second Circuit has summarized the principles governing the resolution of § 2255 claims as follows:

> [N]ot every asserted error of law can be raised on a § 2255 motion. . . . The grounds provided in [§] 2255 for collateral attack on a final judgment in a federal criminal case are narrowly limited, and it has long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. As a general rule, relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.

*Napoli v. United States*, 32 F.3d 31, 35 (2d. Cir. 1994) (internal quotation marks and citations omitted), *amended on reh'g on other grounds*, 45 F.3d 680 (2d Cir. 1995). Constitutional errors will not be corrected through a writ of habeas corpus unless they had a "substantial and injurious effect," that is, unless they resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637–38 (1993); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d. Cir. 1999) (applying *Brecht* test to § 2255 petition).

As relevant here, the Sixth Amendment to the United States Constitution guarantees a criminal defendant the assistance of effective counsel. *United States v. Rosemond*, 958 F.3d 111, 119 (2d Cir. 2020) (quoting U.S. Const. amend. VI) (internal citation omitted).

A petitioner making an ineffectiveness of counsel claim bears a heavy burden. "Ordinarily, to prevail on a claim for ineffective assistance of counsel a defendant must demonstrate that: (1) counsel's performance fell below an 'objective standard of reasonableness;' and (2) defendant was 'prejudiced,' meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Griffiths*, 750 F.3d 237, 242 (2d Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984)).

Where the conviction at issue resulted from a guilty plea, the scope of habeas review of ineffective assistance claims is significantly narrowed. A petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards." *United States v. Coffin,* 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett v. Henderson,* 411 U.S. 258, 267 (1973)) (alteration in *Coffin*). As to this first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (citations and quotations omitted). In addition, to establish the *Strickland* prejudice prong "[i]n the

6

context of guilty pleas, . . . [the petitioner must] demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Ajemian v. United States*, 171 F. Supp. 3d 206, 213 (S.D.N.Y. 2016) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

"The *Strickland* standard is 'highly demanding,' and 'rigorous,' and "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (internal citations omitted). "Although a District Court must hold an evidentiary hearing when presented with any potentially meritorious claim under [§] 2255, a hearing is not required when, 'viewing the evidentiary proffers . . . and record in the light most favorable to the petitioner,' it is clear that the petitioner has failed to establish a 'plausible claim of ineffective assistance of counsel.'" *Lake v. United States*, 465 F. Appx. 33, 34–35 (2d Cir. 2012) (summary order) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)).

**Discussion**

The Court first turns to Petitioner's claim that her counsel was constitutionally ineffective during the pretrial phase of her criminal proceedings. Petitioner asserts three alleged failures of her counsel prior to her plea of guilty, namely, the failure to communicate with her regarding the consequences of her guilty plea, to conduct an adequate pretrial investigation, and attempt to negotiate a more favorable plea agreement.

As to the first claim, Petitioner offers only conclusory allegations which are belied by the record. *See Banks v. N.Y. Dep't of Corr. Servs.*, No. 1-cv-3985 (RWS), 2011 WL 1448612, at *2 (S.D.N.Y. Nov. 15, 2001) (noting that a federal habeas "petition may be dismissed if it contains only vague or conclusory allegations" (citing *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)). For example, Petitioner claims that Attorney Hardy "failed to reasonably consult with [Petitioner]

7

about the means to be used to accomplish her objectives other than to push her into pleading guilty," ECF No. 1 at 4, however, she does not identify what information Attorney Hardy should have communicated to her that would have influenced her decision on whether to plead guilty. *Cf. Belloso-Ibarra v. United States*, No. 9-cv-8216 (SAS), 2010 WL 431904, at *5 (S.D.N.Y. Feb. 8, 2010) (finding that petitioner's claim that counsel "failed to advise [the petitioner] as to all facts and law relevant to his decision to plead guilty" could be "dismissed summarily" because the petitioner "fail[ed] to assert any facts in support" of that claim).

Further, Petitioner's claim is rebutted by her sworn statements at her change of plea hearings. A defendant's sworn admissions at a plea allocution "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. For this reason, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). A district court is "entitled to accept a defendant's statements under oath at a plea allocution as true," *Maher*, 108 F.3d at 1521, and self-inculpatory statements made under oath at a plea allocution "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999). Additionally, "the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Courts within the Second Circuit have consistently credited defendants' plea allocutions over subsequent statements made while attempting to withdraw a plea or vacate a conviction. *See, e.g.*, *Hines v. Miller*, 318 F.3d 157, 159 (2d Cir. 2003) (affirming district court's denial of habeas motion; defendant's earlier motion to withdraw plea was rightly denied because his claims contradicted his statements during the plea colloquy).

At her change of plea hearings, Petitioner acknowledged that she had reviewed with Attorney Hardy the possible penalties she faced, including the potential immigration consequences. She acknowledged that she had an adequate opportunity to discuss the decision to plead guilty with Attorney Hardy, that she had read and reviewed the plea agreement, and that her decision to enter in the plea agreement was made without coercion of any kind. Moreover, she averred that her decision was both knowing and voluntary, having been made after consultation with Attorney Hardy. The conclusory allegations to the contrary that Petitioner now attempts to put forth in the Petition do not warrant either a hearing or habeas relief.

As to Petitioner's second claim that Attorney Hardy failed to conduct a reasonable independent pretrial investigation or research and properly prepare for this case, this claim is likewise precluded by Petitioner's guilty plea. *See Parisi*, 529 F.3d at 138 ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."); *Whitehead*, 943 F.2d at 233; *United States v. Branford*, 833 F. Appx. 902, 904 (2d Cir. 2020) (summary order) ("If a defendant's guilty plea is knowing and voluntary, '[t]he cases are legion that a plea of guilty . . . is an admission of guilt and a waiver of all non-jurisdictional defects.'") (quoting *Unitied States v. Doyle*, 348 F.2d 715, 718 (2d Cir. 1965)). Even if not precluded by her guilty plea, Petitioner "cannot establish an ineffective assistance of counsel claim under *Strickland* based on allegations that counsel failed to conduct an adequate investigation that [are] 'entirely conclusory' and '[a]bsent an identification of the issues that should have been investigated and a showing that such investigation would have led to a different result." *Holland v. Untied States*, No. 3:11-cv-1868 (JBA), 2014 WL 2940889, at *6 (D. Conn. June 30, 2014) (quoting *United States v. Herrera*, 186 F. Appx. 109, 112 (2d Cir.

2006) (summary order)).[2] Thus, the Court concludes that Petitioner's claims that she received ineffective assistance of counsel during the pretrial phases of her criminal proceedings are without merit.

The Court next turns to Petitioner's claim that her counsel was constitutionally ineffective during her sentencing. Specifically, Petitioner asserts that counsel failed to object to any of the enhancements applied to her guideline calculation resulting from the loss amount, her efforts to obstruct justice, her abuse of a position of trust, the presence of a vulnerable victim, and her leadership role in the conspiracy.

As an initial matter, in the plea agreement, Petitioner stipulated to an enhancement for obstruction of justice as well as to the loss amount. Generally, "[s]tipulations made knowingly and voluntarily are enforceable," *Kapelioujnyi v. United States*, 779 F. Supp. 2d 250, 254 (E.D.N.Y. 2009), *aff'd*, 422 F. Appx. 25 (2d Cir. 2011), and "courts may rely on them 'in finding facts relevant to sentencing.'" *Id.* (quoting *United States v. Granik*, 386 F.3d 404, 411 (2d Cir. 2004)). Moreover, because "factual stipulations are bargaining chips in the hands of defendants," *Granik*, 386 F.3d at 412, courts have rejected ineffective assistance claims premised on an attorney's failure to object to sentencing enhancements, as "counsel's decision not to object to the enhancements may have been a strategic decision employed to secure the plea agreement." *Kapelioujnyi*, 779 F. Supp. 2d at 255.

---

[2] Petitioner's third claim that counsel failed to negotiate a favorable plea deal is speculative, conclusory, and rebutted by the record. As the Government observes, the Government agreed to the dismissal of Counts Two through Five of the indictment, as well as the separate complaint filed against Petitioner charging her with obstruction of justice and witness tampering in exchange for Petitioner's guilty plea. *See* ECF No. 7 at 16–17. Accordingly, counsel's negotiation of the plea agreement falls squarely within the presumption of reasonableness afforded under *Strickland*. In addition, and perhaps most notably, Petitioner cannot establish prejudice as to this claim by demonstrating that she would have proceeded to trial and obtained a more favorable outcome had she not pleaded guilty.

On the issue of loss, Attorney Hardy argued at sentencing that Petitioner should receive a below-Guidelines sentence because the recovered bonds would be returned to the victims, and thus, they would not suffer out-of-pocket losses. Indeed, counsel made the very argument at sentencing that Petitioner claims he should have made. As to the obstruction of justice enhancement, as part of the plea agreement, the Government agreed to dismiss the complaint charging Petitioner with obstruction of justice and witness tampering, which would have exposed her to greater criminal liability. Petitioner has failed to establish that Attorney Hardy's conduct fell below the objective standard of reasonableness. *United States v. Griffiths*, 750 F.3d at 242.

As to the other enhancements, the Court notes that counsel lodged objections to Petitioner's presentence report insofar as the Probation Officer believed that the application of enhancements for abuse of positions of trust, vulnerable victim, and leadership role were appropriate. *See United States v. Singh*, No. 3:21-cr-30 (KAD) (D. Conn. Nov. 30, 2022), ECF No. 174 at 26 ¶ 104. Having done so, the Court cannot conclude that counsel's strategic decision to focus his arguments elsewhere at sentencing fell outside the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Last, the Court addresses Petitioner's claim that her counsel was constitutionally ineffective for failing to appeal. The Supreme Court has "long held that a lawyer who disregards specific instructions form the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The filing of a notice of appeal is a "purely ministerial task," and a defendant has "the ultimate authority to decide whether to take an appeal." *Garza v. Idaho*, 139 S. Ct. 738, 745–46 (2019) (internal quotation marks and citations omitted). As to prejudice, "where counsel's error leads to 'the forfeiture of a proceeding itself,' prejudice will be presumed." *Campusano v. United States*, 442 F.3d 770, 775

(2d Cir. 2006) (Sotomayor, J.) (quoting *Flores-Ortega*, 528 U.S. at 476–77). This presumption of prejudice "applies regardless of whether the defendant has signed an appeal waiver." *Garza*, 139 S. Ct. at 742. Moreover, "prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims.'" *Id.* at 749–50 (quoting *Flores-Ortega*, 528 U.S at 484).

When there is a dispute over whether a defendant specifically instructed his attorney to file an appeal, the district court must conduct a hearing and determine as a matter of fact whether an appeal was requested. *Campusano*, 442 F.3d at 776. However, "the district court has discretion to determine if a testimonial hearing will be conducted." *Id.* (citing *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001)) (noting that the Supreme Court has held that, "although a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing"); *see also Daragjati v. United States*, 598 Fed Appx. 50, 52 (2d Cir. 2015) (instructing the district court on remand to "determine as a matter of fact whether [defendant] requested a notice of appeal" but recognizing that a "hearing need not be testimonial").

Petitioner alleges in conclusory fashion that she asked counsel several times to "file a direct appeal on her behalf right after sentencing, however counsel failed to do so. In fact, Counsel said, 'there is nothing you can do about the sentence and deal with your time.'" ECF No. 1 at 7. Petitioner provides only her uncorroborated statement to support this claim. In contrast, Attorney Hardy denies under oath that he had any conversation with Petitioner in which she asked him to appeal her sentence or conviction. ECF No. 9-1 at 1-2. Counsel further states that he has consulted his "billing and time records, notes, and other documents, and cannot locate any correspondence, letter, or email from Ms. Singh or her family members relating to Ms. Singh's desire to file an appeal." *Id.* No records indicate that Petitioner and counsel had any discussions or meetings following her sentencing, and to the best of counsel's recollection, he has not had *any* contact at

all with Petitioner since she was sentenced. *Id.* And because counsel was retained, any discussions regarding the taking of an appeal would likely have been reflected in, at the very least, a draft engagement letter. Attorney Hardy located no evidence of any such discussion, however.

Moreover, the sentencing transcript reveals that the Court advised Petitioner as to her right to appeal. The Court explained that if she wished "to appeal, but cannot afford to do so," that she could "file a motion to proceed in forma pauperis. If that motion is granted, the Court will waive the filing fee for your appeal and will appoint a lawyer to handle your appeal at no cost." ECF No. 188, Tr. at 70:5-10. The Court asked Petitioner if she understood that, and Petitioner indicated that she did. *Id.* at 70:11-12. The Court received no such motion. Accordingly, the Court concludes that a testimonial hearing "would add little or nothing to the written submissions." *Chang*, 250 F.3d at 86, and that Petitioner has cannot demonstrate ineffective assistance of counsel based on Attorney Hardy's failure to appeal her conviction or sentence.

**Conclusion**

For the foregoing reasons, no evidentiary hearing is necessary, and Petitioner's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Court shall not issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of August 2024.

                                                 */s/ Kari A. Dooley*
                                                 KARI A. DOOLEY
                                                 UNITED STATES DISTRICT JUDGE